# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| FERNANDO RODRIGUEZ, | Case No.: 3:04-cv-297-RLH-RAM |
| Petitioner, | **O R D E R** |
| vs. | |
| JACKIE CRAWFORD, *et al.*, | |
| Respondents. | |

Before the Court is Petitioner's **Petition for Writ of Habeas Corpus** (#6), filed August 13, 2004. The Court has also considered Respondents' Answer (#25), filed January 27, 2006, and Petitioner's Reply (#28), filed April 3, 2006.

### BACKGROUND

The instant petition arises out of the findings of a disciplinary hearing conducted at the Ely State Prison on May 16, 2002. During that hearing, Petitioner was found guilty of three violations of the Code of Penal Discipline: G-14 (Failure to follow posted rules and regulations); MJ-29 (Charging or collecting a fee or favors for services as a counsel substitute, legal assistant or

1

"writ writer"); and MJ-31 (The unauthorized use of telephone or mail). (Resp't's Ex. 3.)[1]  Two other charges were dismissed: MJ-36 (Attempt or conspiracy to commit a major violation), and G-20 (Giving false or misleading information to a staff member).  (*Id.*)  As a result of the guilty charges the following sanctions were imposed: 1) Ninety (90) days of administrative segregation; 2) Loss of telephone privileges for sixty (60) days; 3) Loss of canteen privileges for thirty (30) days, and 4) the recommendation that the case be referred for loss of statutory good time.  (*Id.*)  Ultimately, 119 days of Petitioner's statutory good time was revoked.  (Resp'ts Ex. 5.)  The goal of the instant Petition is to recover the 119 days of good time for lack of procedural due process received at the disciplinary hearing.

Petitioner claims he deserves relief because before or during the hearing he should have been granted access to an investigative report and documents that were compiled as evidence of his violations for which he was eventually found guilty.  Petitioner also claims that he did not have adequate notice of the charges before his hearing, that there was no evidence to find him guilty of these violations presented at the hearing, and that he deserved a more full report of the evidence that was relied upon in determining his guilt.

On September 26, 2002, Petitioner filed a petition for writ of habeas corpus with the Seventh Judicial District Court, White Pine County, Nevada.  On May 19, 2003, the district court denied the petition.  Rodriguez appealed to the Nevada Supreme Court on May 29, 2003.  The Nevada Supreme Court did not request an answering brief from the Respondents and on March 23, 2004, the court filed its Order of Affirmance.  (Dkt. #25, Answer Ex. 1.)  On or about June 3, 2004, Petitioner presented the instant Petition for Writ of Habeas Corpus to a corrections officer to be filed pursuant to 28 U.S.C. § 2254.  On September 9, 2005, the Court found that not all the claims in the Petition were exhausted and would need to be voluntarily dismissed or Petitioner could administratively close the case and exhaust the claims in state court.  (Dkt. #15,

---

[1] Unless otherwise stated Respondents' Exhibits are attached to their Motion to Dismiss, Docket #10.  Petitioner's Exhibits are attached to the Petition, Docket #6.

2

Order.) On September 29, 2005, Petitioner declared that he was voluntarily dismissing the unexhausted portions of his Petition.

## DISCUSSION

**I. Federal Habeas Corpus Standards**

When a prisoner's good time credits are taken away, the proper method for restoring those credits is through a habeas corpus action. *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Therefore, 28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), provides the legal standard for the Court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. §2254(d).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the

3

correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer v. Andrade*, 538 U.S. at 75 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id*. (*quoting Williams*, 529 U.S. at 409).

In determining whether a state court decision is contrary to, or an unreasonable application of, federal law, this Court looks to the state courts' last reasoned decision. *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert. denied*, 534 U.S. 944 (2001).

Moreover, "a determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## II. Due Process Standards for Revoking Good Time Credits

Prisoners have a protected liberty interest in good time credits received pursuant to Nev. Rev. Stat. § 209.4465. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974). Due process procedures protect against the arbitrary revocation of these good time credits. *Id*. In *Superintendent v. Hill*, 472 U.S. 445, 454 (1985), the Supreme Court explained the *Wolff* decision and expanded upon it:

> Where a prison disciplinary hearing may result in the loss of good time credits, *Wolff* held that the inmate must receive: (1) advance written notice of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. 418 U.S. at 563–567.
>
> Then the Supreme Court articulated the unique contribution of *Superintendent*:
>
> Although *Wolff* did not require either judicial review or a specified quantum of evidence to support the factfinder's decision, the Court did note that "the provision for a written record helps to assure that administrators, faced with possible scrutiny by state officials and the public and perhaps even the courts, where fundamental human rights may have been abridged, will act fairly." *Wolff*, 418 U.S. at 565. We now hold that revocation of good time does not comport with "the minimum

4

requirements of procedural due process," *id.* at 558, unless the findings of the prison disciplinary board are supported by *some* evidence in the record. *Superintendent*, 472 U.S. at 454 (emphasis added). The Supreme Court went on to classify the evidence in *Superintendent* as "meager" and as only circumstantial, but because there was "some" evidence it was still enough to find that the disciplinary board's decision had some support and was not "otherwise arbitrary." *Id*. at 457.

Petitioner's claims before this Court hinge on whether he received the procedural due process articulated in *Wolff* and *Superintendent*. Petitioner must show that he did not receive procedural due process as articulated by *Wolff* and *Superintendent*, and in doing so, Petitioner is bound by the standards for habeas actions discussed previously.

### III. Grounds

Petitioner voluntarily dismissed the unexhausted portions of his claims before this Court. The only remaining claims are clarified in this Court's Order on Respondents' Motion to Dismiss. (See Dkt. #15.) The Court proceeds on that basis.

*A. Ground I*

In Ground I, Petitioner has exhausted his claims that his constitutional right to due process was violated because he was not provided with the documentary evidence relied upon by the disciplinary hearing officer before or during the hearing. Petitioner claims that this caused him to not have adequate notice. The Nevada Supreme Court held as to this claim:

> First, Rodriguez claimed that the notice he received was inadequate because he was not provided with copies of the documentary evidence relied upon by the disciplinary hearing officer. Rodriguez alleged that as a consequence, he was unable to prepare a defense. We conclude that the district court did not err in determining that Rodriguez received adequate notice. The notice of charges contained sufficient facts to inform Rodriguez of the charges and allow him to marshal the facts and prepare a defense. Further, there is no due process requirement that a prisoner receive copies of documentary evidence relied upon by the disciplinary hearing officer in advance of the hearing. Therefore, we affirm the order of the district court with respect to this claim.

(Dkt. #25, Ex. 1 at 2, Nev. Sup. Ct. Order of Affirmance.)

5

1     Petitioner has pointed to no authority, from the Supreme Court of the United States
2 or any other court, that would suggest the Nevada courts' application of the law was contrary to or
3 an unreasonable application of the law. Neither *Wolff* nor *Superintendent* stand for the proposition
4 that due process requires a complete divulgence of evidence gathered in an ongoing investigation
5 prior to or during a disciplinary hearing. Due process only requires that inmates have adequate
6 notice of the facts "to give the charged party a chance to marshal the facts in his defense and to
7 clarify what the charges are." *Wolff*, 418 U.S. at 564.

8     Due process also requires that inmates be given "a written statement by the
9 factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent*,
10 472 U.S. at 454. However, that is not what Petitioner is claiming in Ground I. Petitioner claims
11 he should have been able to see the investigative documents at the hearing because of Nevada
12 Code of Penal Discipline § II(C)(3)(b). (Dkt. #6, Pet. 8 [marked as 3c by Petitioner].) The
13 Nevada Supreme Court ruled on this as well, stating:

14     The summary of Rodriguez's hearing states that the hearing officer relied upon a
      written report, which found that Rodriguez "was receiving monies from Inmate
15    Jones . . . via a fictitious business for legal assistance." Even if Rodriguez was not
      allowed to examine the written report upon which the hearing officer relied, he
16    failed to demonstrate that this violated his basic due process rights. Moreover, the
      provisions of the Nevada Code of Penal Discipline do not "create any right or
17    interest in life, liberty or property, or establish the basis for any cause of action
      against the State of Nevada . . . or [its] employees." Consequently, the district court
18    did not err in denying this claim.

19 (Dkt. #25, Ex. 1 at 3, Nev. Sup. Ct. Order of Affirmance) (citations omitted). Petitioner has also
20 not submitted, and the Court is not aware of, any case law that would suggest this holding is
21 "contrary to, or involved an unreasonable application of, clearly established Federal law," 28
22 U.S.C. §2254(d)(1). The Court further notes that the state courts did not rely on the documentary
23 evidence in denying Petitioner's state court petition. The Nevada district court and Nevada
24 Supreme Court both relied upon the testimony evidence at the hearing as sufficient to find there
25 was "some evidence" that Petitioner committed the violations.
26

6

Therefore, the Court finds that Petitioner has not met his burden and the Petition is denied on Ground I.

*B. Ground II*

In Ground II, Petitioner claims his constitutional right to due process was violated because the prison's inadequate notice of the disciplinary charges against him did not allow him to prepare a defense.

The Nevada district court noted its displeasure with Respondents' briefing on this subject, but after reviewing the document itself, the district court ultimately held that the notice of charges had "sufficient detail to marshal a defense." (Dkt. #6, Pet. 24, State Dist. Ct. Denial of Pet.) The Nevada Supreme Court affirmed that "the district court did not err in determining that Rodriguez received adequate notice. The notice of charges contained sufficient facts to inform Rodriguez of the charges and allow him to marshal the facts and prepare a defense." (Dkt. #25, Ex. 1 at 2, Nev. Sup. Ct. Order of Affirmance.). The notice of charges listed the charges, the facts supporting those charges, and gave a date for some infractions. (Pet'r Ex. 2.)

Furthermore, Petitioner has pointed to no authority, from the Supreme Court of the United States or any other court, that would suggest the Nevada courts' application of the law was contrary to or an unreasonable application of the law. Due process requires that inmates have adequate notice of the facts "to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are." *Wolff*, 418 U.S. at 564. This Court finds that the Nevada Supreme Court's holding was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. Therefore the Petition is denied on Ground II.

Even though Ground II essentially claimed lack of notice, Petitioner also asserts in Ground II that there was no evidence proffered of the alleged violations. This claim pervades the Petition and will be addressed directly in Ground III and Ground IV below.

////

////

AO 72
(Rev. 8/82)

*C. Ground III*

In Ground III, Petitioner has only exhausted the claim that his constitutional rights were violated because the hearing officer found him guilty based on evidence not presented at his hearing.

Both the Nevada district court, and the Nevada Supreme Court, held that the withholding of investigative documents was not fatal in this instance because the testimony of Petitioner and his witness at the hearing "contained in §4 and §5 of Exhibit 3[,] would support the finding of guilt. Both inmates admit that Rodriguez did typing for Jones, and Jones sent Rodriguez money." (Dkt. #6, Pet. 25, State Dist. Ct. Denial of Pet.) In its Affirmance, the Nevada Supreme Court noted the following: "Additionally, inmate Jones stated, 'I sent him monies. He was just helping with typing.' We conclude that there is some evidence to support the . . . finding that Rodriguez committed the above violations." (Dkt. #25, Ex. 1 at 4, Nev. Sup. Ct. Order of Affirmance.)

Therefore, even though there was evidence considered that was not presented at the hearing, and Petitioner interprets the evidence from the disciplinary hearing differently than the hearing officer, the Nevada district and supreme courts found that there was "some evidence" on the record that substantiates the disciplinary officer's findings. *Superintendent*, 472 U.S. at 454, 455. This Court finds that the Nevada Supreme Court's holding was not contrary to, nor did it involve an unreasonable application of, clearly established federal law. Therefore the Petition is denied on Ground III.

*D. Ground IV*

In Ground IV, Petitioner claims that his constitutional rights of due process of law were violated because no evidence of his guilt was actually presented at the hearing; that the evidence presented at the hearing actually exonerated Petitioner, thus evidencing the bias of the Respondents; and that the evidence in Sgt. Cunningham's report should have been referred to specifically in the written summary of the hearing.

8

1       Petitioner seems to assert that the Court should review all the evidence, listen to
2 tapes of the hearing, or do a *de novo* review of the disciplinary hearing, then find him not guilty of
3 any of the violations. This however is not the appropriate function of the Court at this point. The
4 Supreme Court has clarified the appropriate review to be conducted by this Court:

> We hold that the requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits. . . . Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Superintendent*, 472 U.S. at 455–56. As discussed in Ground III, there is some evidence to support the conclusion reached by the disciplinary officers. Therefore, Plaintiff's claims that the evidence presented at the hearing actually exonerated him, or was insufficient to find him guilty, fail. The Petition is denied on those claims.

      In Ground IV Petitioner also asserts claims regarding the post-hearing document summarizing the evidence relied upon. Petitioner claims that evidence in Sgt. Cunningham's investigative report should have been referred to with specificity because the disciplinary hearing summary does claim that the investigative report was relied upon.

      Due process requires that inmates be given "a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action." *Superintendent*, 472 U.S. at 454. The Nevada district court held that the disciplinary hearing officer's notation that Sgt. Cunningham's written report was relied upon "provides no information as to what the evidence was that lead to the finding of guilt." (Dkt. #6, Pet. 25.) Further, the Nevada district court noted that:

> Rodriguez allegation that no documentary evidence was produced is confirmed by § 6(A) and (B) of Exhibit 3. On the Exhibit, the hearing officer marked a box which indicated "In-camera review of documents: Found reliable." The officer did not mark any other box regarding confidential information. Thus the Court has no information which would support the officer's refusal to produce the documentary evidence against Rodriguez.

1 (Dkt. #6, Pet. 25.) This is not a trivial matter. In *Superintendent* the Supreme Court reaffirmed

2 *Wolff*'s reasoning of the importance of recording the evidence relied upon:

> Although *Wolff* did not require either judicial review or a specified quantum of evidence to support the factfinder's decision, the Court did note that "the provision for a written record helps to assure that administrators, faced with possible scrutiny by state officials and the public, and perhaps even the courts, where fundamental human rights may have been abridged, will act fairly."

6 *Superintendent*, 472 U.S. at 454 (quoting *Wolff*, 418 U.S. at 565). The Supreme Court thereafter

7 announced the "some evidence" standard discussed previously. *Id.* However, the Supreme Court

8 clearly stated the need for a clear record of evidence and linked that need to the reviewing Court's

9 ability to protect inmates from arbitrary and unfair rulings in disciplinary hearings.

10       The Nevada district court ultimately held that the failure to produce the

11 investigative documents, or report specifically what they contained, was not fatal for the

12 government in this instance because the testimonies of Petitioner and his witness that

13 *were* "contained in §4 and §5 of Exhibit 3 would support the finding of guilt. Both inmates admit

14 that Rodriguez did typing for Jones, and Jones sent Rodriguez money." (Dkt. #6, Pet. 25, State

15 Dist. Ct. Denial of Pet.); (see also Dkt. #25, Ex. 1 at 4, Nev. Sup. Ct. Order of Affirmance)

16 ("Additionally, inmate Jones stated, 'I sent him monies. He was just helping with typing.' We

17 conclude that there is some evidence to support the . . . finding that Rodriguez committed the

18 above violations.".)

19       In summary, it appears that if Petitioner and his witness had not testified as they

20 did, the Nevada district court would have found there was no evidence to uphold the findings of

21 guilt in this instance, and also would have found no reason to sustain the withholding of the

22 investigative documents. However, as substantiated by the Petition itself, there is evidence in the

23 record that the witness Jones did send Petitioner money, and Petitioner had done some typing on a

24 case involving Jones. These testimonies were recorded in the summary of Petitioner's disciplinary

25 hearing. The testimonies provided the evidence that the Nevada district and supreme courts held

26 was sufficient to deny the habeas petition, not the information that was in the investigative report.

1  Therefore, Petitioner's claims that the information in the investigative documents should have
2  been referred to with specificity are without force.  The information in those documents did not
3  serve as a basis for denying the habeas petition at any stage and it does not before this Court either.
4        This Court finds that the Nevada Supreme Court's holding was not contrary to, nor
5  did it involve an unreasonable application of, clearly established federal law.  Therefore the
6  Petition is denied on Ground IV.
7      *E. Ground V*
8        In Ground V, Petitioner has only exhausted the portion of his claim that provision
9  G-14 (failure to follow posted rules and regulations) was unconstitutional as applied in his case
10  because the rules and regulations Petitioner allegedly violated were not "posted" within the plain
11  meaning of that term.  The Nevada Supreme Court held as to this claim:

> Fifth, Rodriguez contended that he could not be guilty of G-14 (failure to follow posted rules and regulations) because there was no evidence presented at the disciplinary hearing that the rules he allegedly violated were actually posted.  The Nevada Code of Penal Discipline states that "[u]pon entry to the [Nevada Department of Prisons], all inmates should be issued, and required to sign for, a copy of the Code."[9]  Because the rules Rodriguez violated were contained in the Code, we conclude that there was some evidence to support the hearing officer's finding that Rodriguez failed to follow posted rules and regulations.[10]  Therefore, we affirm the order of the district court with respect to this claim.
>
> ....
>
> [9]Section I(C).
>
> [10]Rodriguez claimed that in order to be "posted," a rule or regulation must be written on the walls of the institution.  Although we recognized that a "posted" rule is typically displayed in a place of public view, this does not alter our conclusion that some evidence supported the disciplinary hearing officer's determination that Rodriguez committed a violation of the rule.  See Hill, 472 U.S. at 457 (noting that in order to meet constitutional requirements, the evidence does not need to logically rule out "any conclusion but the one reached by the disciplinary board").

(Dkt. #6, Pet. 30, Nev. Sup. Ct. Order of Affirmance.)  The disciplinary hearing summary does not
record that the Code of Penal Discipline was "posted."  Instead, the Nevada Supreme Court
emphasized why it was holding that the Code of Penal Discipline was "posted," and why it did not

11

need to be stated in the disciplinary hearing record.  The Court notes here that the disciplinary hearing is not held to the same standard as a criminal trial.  On this point the Supreme Court has stated:

> The fundamental fairness of the Due Process Clause does not require courts to set aside decisions of prison administrators *that have some basis in fact*.  Revocation of good time credits *is not comparable to a criminal conviction*, [*Wolff*, 418 U.S.] at 556 . . . and neither the amount of evidence necessary to support such a conviction, [citation omitted] nor any other standard greater than some evidence applies in this context.

*Superintendent*, 472 U.S. at 456 (emphasis added).

Essentially the Nevada Supreme Court took judicial notice of the Code of Penal Discipline's universal distribution to all inmates and determined that it constituted a "posting" of those rules within the meaning of G-14.  Petitioner does not dispute that this distribution occurs, he only disputes whether the distribution should be considered a posting.  Therefore, the last remaining point is to determine if the Nevada Supreme Court's determination that this distribution scheme constitutes a "posting" of the Code of Penal Discipline violates Petitioner's federal rights.

The Court first notes that it would violate principles of comity for a federal district court to nullify or ignore a state supreme court's definition of terms in a state agency-created rule.  Even if the Court did disagree with the Nevada Supreme Court on the definition of "posted," the Court could not find that the decision was objectively unreasonable or contrary to federal law.  Petitioner points to no grounds for doing so and the Court is not aware of any in this context.  Therefore, the Court will not reverse the Nevada Supreme Court's determination that the rules in the Code of Penal Discipline are "posted" within the meaning of rule G-14 because they are universally distributed to inmates.

*F.  Ground VI*

Ground VI has been voluntarily dismissed in its entirety.

////

////

**CONCLUSION**

Accordingly, and for good cause appearing,

IT IS HEREBY ORDERED that Petitioner's Petition for Writ of Habeas Corpus (#6) is DENIED.

Dated: March 10, 2008.

_____
**ROGER L. HUNT**
**Chief United States District Judge**

13